UNITED STATES of America,
Plaintiff–Appellee,

v.

David Michael DEIGERT,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald Raymond SIGWART,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

William SCOTT, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Anna ADOLPHSON,
Defendant–Appellant.

Nos. 89–5184 to 89–5186 and 89–5455.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1990.

Decided Oct. 12, 1990.

Stephen Jon Cribari, Deputy Federal Defender, and Francis Samuel Brocato, Brocato, Price & Bushel, P.A., Baltimore, Md., argued (Fred Warren Bennett, Federal Public Defender, Baltimore, Md., and Richard Stolker, Rockville, Md., on brief), for defendants-appellants.

Jan Paul Miller, Asst. U.S. Atty., Baltimore, Md., for plaintiff-appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and TILLEY, District Judge for the Middle District of North Carolina, sitting by designation.

PER CURIAM:

The defendants were found guilty of various counts in an indictment alleging a drug conspiracy and substantive distribution violations transpiring from 1981 until March 1988. Each argues that his or her individual sentence violated the *ex post facto* clause of the constitution because it was fashioned according to the federal Sentencing Guidelines and included punishment for conduct occurring before November 1, 1987, when the Guidelines became effective. We have recently considered and rejected the *ex post facto* argument in this circuit. See *United States v. Sheffer,* 896

F.2d 842 (4th Cir.1990). The sentences of David Michael Deigert and Donald Raymond Sigwart are, therefore, affirmed.

William Scott and Anna Adolphson raise other questions about the sentencing process. For the reasons which follow, Scott's sentence will be affirmed and Adolphson's will be remanded to the district court for further consideration.

### SCOTT

#### I.

Scott contends the district court erred by including "relevant conduct" (*i.e.,* Scott's participation in the overall scheme or transaction as distinguished from that specifically charged in the individual count to which he pled guilty) in calculating his base offense level. This, he argues, was not permissible for offenses occurring prior to amendments of the United States Sentencing Commission *Guidelines Manual,* §§ 1B1.2 and 1B1.3 (hereinafter U.S.S.G.) which became effective on January 15, 1988.

Prior to imposing sentence, the district court addressed this contention in a memorandum opinion, quoting the Sentencing Commission's statement that "[t]he purposes of this amendment are to correct a clerical error and to clarify the operation of the guidelines." See *United States v. Ofchinick,* 877 F.2d 251, 257 n. 9 (3d Cir. 1989) (amendment intended to clarify the meaning of an existing guideline may be given substantial weight in determining the meaning of the existing guideline). Based upon the reasoning of *United States v. Guerrero,* 863 F.2d 245 (2d Cir.1988), the district court held the amendments not to be substantive and, accordingly, found "pursuant to Sections 1B1.2 and 1B1.3 that defendants involved in a conspiracy can be sentenced for all the drugs known or reasonably foreseen by them...." J.A. 76.

We agree with the district court and join the Tenth and Sixth Circuits in adopting the reasoning of *Guerrero, supra,* that the relevant January 15, 1988, amendments were not substantive changes, but clarifications of the existing principle that relevant

conduct should be used to determine a defendant's base offense level. See *United States v. Frederick,* 897 F.2d 490, 494 (10th Cir.1990); *United States v. Sailes,* 872 F.2d 735 (6th Cir.1989).

## II.

■ Scott also contends that the district court erred by considering two prior alcohol-related traffic offenses—driving while impaired and driving under the influence of alcohol—in calculating his criminal history. Had the offenses not been considered, Scott would have been in criminal history category I instead of II and in a Guidelines range of 51–67 months instead of 57–71 months.

According to U.S.S.G. § 4A1.2 all felony offenses, misdemeanors and petty offenses are counted in arriving at a criminal history category unless specifically excluded by § 4A1.2(c) or other specific exclusion not relevant here. See U.S.S.G. § 4A1.2(e)–(j).

Guidelines § 4A1.2, (n.5) provides:

*Sentences for Driving While Intoxicated or Under the Influence.* Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c).

Scott cites no authority to indicate the prior convictions should not have been counted. Because they are not excluded by § 4A1.2(c) and are expressly included by the terms of § 4A1.2, (n.5), the district judge correctly counted both in calculating the criminal history category to be II.

■ Scott contends that even if the alcohol-related convictions are properly counted, the district court erred when it failed to consider a downward departure on the ground that they "significantly over-represent[ed] the seriousness of [the] defendant's criminal history," U.S.S.G. § 4A1.3.

In *United States v. Bayerle,* 898 F.2d 28 (4th Cir.1990), this Court held a refusal to depart downward not appealable by the defendant unless it is the result of the "court's mistaken view that it lacked the

authority to depart." *Bayerle, supra,* at 31. Scott offers nothing which persuades us that the district court misunderstood its authority when it did not depart downward.

## ADOLPHSON

### III.

At sentencing, Adolphson requested a downward departure based upon a combination of "5H factors" referred to collectively as her tragic personal background and family history. During oral argument before this Court, her attorney enumerated those as being: a traumatic and abusive upbringing, a drug addiction that was manipulated "over about a decade and a half," a money debt to her brother—a co-defendant—for having wrecked his car, being the mother of several children, and being pregnant at the time of sentencing.

Adolphson contends that the sentencing judge did not give consideration to her "tragic personal background and family history" as a ground for downward departure because he mistakenly interpreted the Guidelines as totally prohibiting departures based on personal history and family background. See *Bayerle, supra.* She cites the following statements of the court as indicating a mistaken view:

The Court is also not prepared to depart on the basis of the Defendant's tragic and unfortunate background. The policy statements set forth in 5H1.1 through 10 clearly establish that such considerations relate to setting a sentence within the guidelines and are not grounds for departure.

From the Court's experience, virtually every Defendant appearing before it has elements in his or her background which may well have led to the criminal activity and frequently can engender the sympathy of the court.

Such factors were clearly relevant in criminal sentencing prior to the sentencing reform act, but such policy on departures under the Act destroys the whole purpose of the Act....

While I recognize that judges of this Court have made such departures, as

have other judges across the country, I cannot justify flying in the face of the legislative mandate in this matter.

J.A. 122.

■ Sentencing judges have the power to depart[1] when confronted with circumstances "of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission," 18 U.S.C. § 3553(b). To the extent §§ 5H1.1–5H1.6 factors might relate to this case, the Guidelines permit departure when the circumstances are extraordinary. *United States v. Brand,* 907 F.2d 31 (4th Cir.1990). Whether or not factors are extraordinary is a question of fact to which the clearly erroneous standard applies on appeal. *United States v. Summers,* 893 F.2d 63 (4th Cir.1990), and *Brand, supra.* Whether or not a factor was adequately taken into consideration by the Sentencing Commission is a finding to which the de novo standard applies on appeal. See *Summers, supra,* at 66, 67.

■ In the present case, it is difficult to ascertain from his remarks whether the sentencing judge declined to depart downward in the exercise of his discretion or whether he considered that the proffered bases would not allow departure under even extraordinary circumstances.[2]

For this reason, Adolphson's case will be remanded to the district court so that, in the event it did not perceive its original refusal to depart as being discretionary, it may reconsider Adolphson's request in light of *Summers, supra,* and *Goff, supra,* at 1447 (an unusual case is not created by viewing typical factors cumulatively).

■ While we are reluctant to formulate a rule requiring sentencing courts to ex-press for the record whether they are exercising their discretion when refusing to depart, we believe making such an expression would be the better practice.

AFFIRMED IN PART AND REMANDED IN PART.

---

1. Departures, however, may not be based on those factors specified in § 5H1.10 (race, sex, national origin, creed, religion, socio-economic status), the third sentence of § 5H1.4 (drug dependence or alcohol abuse), or the last sentence of § 5K2.12 (personal financial difficulties and economic pressures upon a trade or business). See U.S.S.G. Ch. 1, Part A, Introduction 4(b), (p.s.) (*Departures*).

2. Two of those factors proffered as grounds for departure—drug abuse and personal financial difficulty—may not, under even extraordinary circumstances, individually or in combination, support a downward departure. See *United States v. Goff,* 907 F.2d 1441, 1445 (4th Cir.1990) (drug abuse is not, in whole or in part, a ground for departure); U.S.S.G. § 5K2.12 ("The Commission considered the relevance of economic hardship and determined that personal financial difficulties ... do not warrant a decrease in sentence.").